**GREENBERG TRAURIG, LLP**
J. David Bournazian, Bar No. 186194
bournaziand@gtlaw.com
Tyler R. Andrews, Bar No. 250686
andrewst@gtlaw.com
3161 Michelson Drive, Suite 1000
Irvine, CA  92612
Telephone:   949.732.6500
Facsimile:    949.732.6501

Attorneys for Plaintiff
RUSSELL SIGLER, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| RUSSELL SIGLER, INC., a New Mexico corporation<br><br>Plaintiff,<br><br>v.<br><br>DAVID A. WHITAKER, an individual,<br><br>Defendant. | Case No.: 8:18-cv-1889<br><br>RUSSEL SIGLER, INC.' S COMPLAINT FOR:<br><br>1. Misappropriation of Trade Secrets (Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836)<br>2. Misappropriation of Trade Secrets (Violation of Cal. Civ. Code. §§ 3426 et seq.)<br>3. Breach of Contract<br>4. Tortious Interference with Contract<br>5. Intentional Interference with Prospective Economic Advantage<br>6. Unfair Competition (Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.)<br>7. Declaratory Relief<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT

Plaintiff Russell Sigler, Inc. ("Sigler" or "Plaintiff") brings this action against David A. Whitaker ("Mr. Whitaker" or "Defendant") for misappropriation of trade secrets, breach of contract, interference with contractual relations, interference with prospective economic advantage, breach of fiduciary duty, unfair competition, and breach of the Employment and Compensation Agreement for Commercial Sales (the "Agreement") with Sigler.[1]  As set forth below, Defendant has misappropriated and disclosed Sigler's trade secrets and confidential information, and improperly competed with Sigler.  Sigler seeks both damages and injunctive relief preventing further misappropriation or violations of the Agreement at issue.

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the laws of the United States (specifically, the Defend Trade Secrets Act, 18 U.S.C. § 1836).  Supplemental jurisdiction over the state law causes of action is appropriate under 28 U.S.C. §1367(a) because those causes of action are part of the same case and controversy.  Further, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are completely diverse and because the amount in controversy exceeds $75,000.

2. The Court has personal jurisdiction over Defendant because he is a citizen of the State of California.  Venue is proper in the Central District of California, under 28 U.S.C. §§ 84(d) and 1391(b), because Defendant resides in Orange County, a substantial part of the events giving rise to these claims occurred in Orange County, and because Defendant is subject to personal jurisdiction in this Court.

///

///

---

[1] A true and correct copy of the Agreement is attached as Exhibit A.

# THE PARTIES

3. Plaintiff, Russell Sigler, Inc. ("Sigler"), is a New Mexico corporation headquartered in Tolleson, Arizona.

4. Defendant David A. Whitaker ("Mr. Whitaker") is a former Sigler employee, residing in Orange County, California.

5. Norman S. Wright Mechanical Equipment Co. and Norman S. Wright Climatec Mechanical Equipment of Southern California, LLC (collectively, "NSWright") are competitors of Sigler.

# FACTUAL ALLEGATIONS

6. Sigler is a leading HVAC distributor with thirty locations in the Southwest, including California. Sigler is one of the largest HVAC distributors in the world.

7. Sigler's business includes identifying and establishing business relationships with clients that require HVAC solutions, including custom solutions and large commercial projects.

8. Sigler also spends considerable time and money training its numerous employees and salespeople to identify, establish, cultivate, and maintain relationships with its clients.

9. Sigler has generated substantial goodwill by cultivating relationships with its clients and consultants. This goodwill is enhanced and cultivated by Sigler's proprietary marketing, training, and customer support.

**David Whitaker Executes Sigler's Employment and Compensation Agreement for Commercial Sales, as well as Agrees to Confidentiality**

10. On or about January 1, 2017, Defendant David Whitaker reaffirmed his employment with Sigler in the position of Sales Engineer. In this position, Mr. Whitaker represented Sigler in various markets and trading areas and with respect to customers in certain industries and geographic areas.

///

11. Mr. Whitaker and Sigler entered into an Employment and Compensation Agreement for Commercial Sales (the "Agreement") that laid out various terms and conditions of Mr. Whitaker's employment.

12. Because Mr. Whitaker would be provided access to, and trained in, Sigler's confidential and proprietary business information, Section 5 of the Agreement includes eight (8) separate provisions addressing confidentiality of Sigler's information.

13. Consistent with this expectation, Mr. Whitaker received specialized training in Sigler's confidential and proprietary marketing practices, client development strategies, business plans, and other critical areas of operation.

14. During his time at Sigler, Mr. Whitaker gained knowledge of Sigler's unique and proprietary consulting and sales techniques, client relationship management strategies, and business development plans and pricing. Sigler also provided Mr. Whitaker with access to its confidential client database, containing substantial information and details about Sigler's current and prospective clients and customers.

15. Based on his training and access to proprietary information, Mr. Whitaker was intimately familiar with every aspect of Sigler's business and client relationships, including:

    (a) the education, experience, and intangibles of Sales Engineers necessary to satisfy clients' needs;

    (b) the identities, likes, and dislikes of clients, including those with authority to hire consultants and pay for Sigler's services;

    (c) client-specific needs;

    (d) how much clients are willing to pay for Sigler's services;

    (e) Sigler's pricing rates, markup percentages, and gross margin percentages and strategies;

///

(f) specific custom and specialty products sought by clients, clients' current systems, the deadlines and other limitations within which clients are working, and, if applicable, clients' future needs;

(g) Sigler's fulfillment process, by which Sigler ensures that its products and services fulfill client needs; and

(h) compensation packages, bonus structures, and other benefits.

### The Agreement is Binding

16. Mr. Whitaker signed the Agreement with Sigler effective as of January 1, 2017 (Exhibit A).

17. Sigler would not have trained, paid, or promoted Mr. Whitaker, or provided him with access to Sigler's confidential information, if Mr. Whitaker did not execute the Agreement and agree to be bound by the protective covenants therein.

18. The Agreement contains eight separate provisions that address confidentiality. Specifically, Section 5.1 of the Agreement addresses non-disclosure of confidential information, and states:

> Employee acknowledges that during the normal course of employment with Sigler, Employee will have access to information of a ***confidential and/or trade secret nature which has great value to Sigler*** and which constitutes a substantial basis and foundation upon which the business of Sigler is based. "Confidential Information" means and includes documents, materials and other information, in tangible and intangible form, regarding client contracts, rates, fee schedules, marketing plans, strategic plans, financial information including products, services or business, licenses, contracts, patent applications, proprietary data, trade secrets, know-how, technology, general or specific locations of planned projects

- 4 -
COMPLAINT

and sites, general or specific Locations and/or names of existing or planned service and/or sites, or other services contract sites, names and contact information of the entities involved directly or indirectly in Sigler's projects, their employees, officers, and consultants, and any other proprietary information relating to the past, present or future research, development and business of Sigler, whether proprietary to Sigler, or obtained by Sigler from others. … **_Employee will not, during the term of employment or at any time after the termination of employment, disclose copy, make use of, or remove from Sigler premises, Confidential Information_** except as may be required in the course of Employee's employment with and for the benefit of Sigler. Employee specifically acknowledges that any use of Confidential Information by persons not employed by Sigler or who are not authorized by Sigler to use the information provides such persons an unfair competitive advantage which they would not have had without the use of Confidential Information.

*See* Exhibit A, § 5.1 (emphasis added).

19. The Agreement also mandates that within 5 days of Mr. Whitaker's last day of employment, Mr. Whitaker must return to Sigler and delete from any personal computer or other device all originals and all copies of various Sigler information. Specifically, Section 5.2 of the Agreement states:

No later than five (5) days after Employee's last day of employment with Sigler, **_Employee will return to Sigler and delete from any personal computer or other device all originals and all copies_** of any Sigler property, Confidential Information, and all materials, documents, notes, manuals, computer disks, cellular phones,

computers, or lists containing or embodying Confidential Information, or relating directly or indirectly to the business of Sigler, which are in Employee's possession or control.

*See* Exhibit A, § 5.2 (emphasis added).

20. The Agreement also requires that Mr. Whitaker refrain from having any ownership interest, working for, advising, or having any business relationship with any person or entity that competes (or is planning to compete) with Sigler. Specifically, Section 5.4 of the Agreement provides:

> Employee agrees that during Employee's employment with Sigler, Employee will not directly or indirectly, have any ownership interest, work for, advise or have any business relationship with any person or entity that competes with Sigler, or that is planning to compete with Sigler. While employed by Sigler, Employee will not use any unfair business practices to establish a competing business or undertake any actions to impair Sigler's relationship with its existing customers and business.

*See* Exhibit A, § 5.4.

21. Pursuant to Section 5.5 of the Agreement, Mr. Whitaker agreed that while employed, and for a period of one year after the conclusion of his employment, he would not solicit customers using Sigler's confidential information. Specifically, Mr. Whitaker agreed that

> Employee recognizes that information about Sigler's customers is Confidential Information and may be a trade secret of Sigler. During the term of Employee's employment, Employee will not divert or attempt to divert from Sigler any business or customers with whom Employee dealt or about whom Employee had access to Confidential Information by virtue of Employee's employment. In addition, for a period of one (1)

- 6 -
COMPLAINT

1  year following the conclusion of Employee's employment,
2  Employee will not use trade secrets or other unfair business
3  practices to divert or attempt to divert from Sigler any business
4  or customers with whom Employee dealt or about whom
5  Employee had access to Confidential Information by virtue of
6  Employee's employment.
7  *See* Exhibit A, § 5.5.

8  22. Mr. Whitaker understood that the confidentiality provisions survive the
9  conclusion of his employment with Sigler, and that Sigler is entitled to injunctive
10 relief in the event of any breach because remedies at law for violation of the
11 Agreement would be inadequate. See Exhibit A, §§ 5.6, 5.8.

12 23. Relying on Mr. Whitaker's various agreements and obligations, Sigler
13 trained Mr. Whitaker and provided access to Sigler's confidential information,
14 continued to promote him, and granted him increasing levels of responsibility over
15 the company's clients and operations.

16 **Mr. Whitaker was Conveying Trade Secret Information to a Competitor**

17 24. During his employment with Sigler, Mr. Whitaker utilized the training,
18 knowledge, and skills received from Sigler, as well as access to the Sigler's
19 confidential information, to cultivate, develop, and maintain relationships with
20 Sigler's clients.

21 25. On May 29, 2018, Mr. Whitaker's employment with Sigler concluded.

22 26. Weeks, if not months prior to leaving Sigler, Mr. Whitaker developed
23 a scheme to misappropriate Sigler's trade secrets and use Sigler's confidential data
24 to improperly compete with Sigler through another employer, non-party NSWright,
25 thereby destroying Sigler's business relationships. In furtherance of that effort, Mr.
26 Sigler directly provided to Adam Helliwell, an officer of NSWright, Sigler's
27 confidential trade secret information and materials, including, but not limited to,
28 internal pricing information, bids, proposals and job information.

27. Mr. Whitaker also sought to undermine Sigler customers and jobs by thwarting jobs and failing to order equipment.

28. The improper actions and communications by Mr. Whitaker subjects him to liability. See, Daniel Orifice Fitting Co. v. Whalen (1962) 198 Cal.App.2d 791, 801; Sequoia Vacuum Systems v. Stransky (1964) 229 Cal.App.2d 281, 286; Xum Speegle, Inc. v. Fields (1963) 216 Cal.App.2d 546, 554-555. Mr. Whitaker has engaged in such extensive misappropriation of information and materials, as well as has interfered with Sigler's business, that he must be precluded from working at NSWright. Lab.C. §§ 2860, 2863.

29. Mr. Whitaker's acts clearly constitute unfair competition.

30. On June 18, 2018, Sigler immediately sent a letter to NSWright demanding that NSWright, among other things, cease and desist from the use of Sigler's confidential materials and information.

31. Despite numerous attempts, however, NSWright, responding on behalf of Mr. Whitaker, has rejected Sigler's requests.

32. On information and belief, Mr. Whitaker has used, and continues to use, Sigler's confidential information and trade secrets for his own benefit, and without authorization.

33. Although the full extent of Defendant's improper conduct is under investigation, the available evidence indicates that Mr. Whitaker, since terminating his employment with Sigler, has been using and disclosing Sigler's confidential information to solicit Sigler's customers (including clients, client representatives, and/or consultants), and directly competing with Sigler in violation of the Agreement.

///
///
///
///

# FIRST CLAIM

## Misappropriation of Trade Secrets (Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836)

34. Plaintiff re-alleges and incorporates herein by reference the allegations contained in paragraphs 1 through 31 of this Complaint.

35. Sigler owns and possesses confidential, proprietary, and trade secret information, including, but not limited to, client lists, strategic plans, pricing models, proposed services, business development data, and other confidential and proprietary Sigler information ("Sigler's Trade Secrets").

36. Sigler's Trade Secrets relate to products and services, including, but not limited to, HVAC-related goods and services, that it uses in, or intends to use in, interstate and foreign commerce. For example, Sigler maintains offices in numerous locations in the United States and provides services to customers throughout the Southwest.

37. Sigler has taken reasonable steps to keep Sigler's Trade Secrets confidential and secret, including, but not limited to, requiring its employees to enter into agreements that impose strong confidentiality obligations and limit use and disclosure of Confidential Information, restricting access to essential personnel only, limiting remote access, and routinely changing passwords.

38. Sigler's Trade Secrets derive independent economic value from not being known to or readily ascertainable, through proper means, by other persons who could obtain economic value from its disclosure or use.

39. Sigler is informed and believes, that in violation of Sigler's rights, Defendant intentionally, fraudulently, maliciously, and oppressively misappropriated, used, and continues to use Sigler's Trade Secrets in the ways described in this Complaint—including, but not limited to, utilization of proprietary client lists and data, strategic plans, pricing models, and proposed services, to improperly compete with Sigler.

40. If Defendant's conduct is not remedied, and if Defendant is not enjoined, Defendant will continue to misappropriate, use, and disclose Sigler's confidential Trade Secrets for his own benefit and to Sigler's detriment.

41. As a direct and proximate result of Defendant's actionable conduct, Sigler has suffered significant damages in an amount to be proven at trial. Sigler has also suffered and will continue to suffer irreparable injury until Defendant's conduct is permanently enjoined.

42. Because Sigler's remedy at law is inadequate, Sigler seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its Trade Secrets and other legitimate business interests.

43. Defendant's conduct caused and continues to cause damages to Sigler, has threatened and continues to threaten Sigler's relationships with its clients and consultants, and negatively impacts Sigler's business reputation, and thus its ability to maintain and grow its customer base in a competitive market. Sigler will continue to suffer this and other irreparable harm until and unless the Court grants injunctive relief.

44. Defendant's activities, as alleged herein, constituted blatant, willful, and malicious misappropriation of Sigler's Trade Secrets through improper means.

45. Sigler has been damaged by the foregoing actions and is entitled to its damages in an amount to be determined at trial of at least $5,000,000 and, in addition, an award of exemplary damages and attorney's fees.

## SECOND CLAIM

### Misappropriation of Trade Secrets (Violation of Cal. Civ. Code. §§ 3426 et seq.)

46. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 43 of the Complaint.

47. Defendant has used—and continues to use—Sigler's client lists, strategic plans, pricing models, candidate histories, proposed services, contract

- 10 -
COMPLAINT

forms, and other confidential and proprietary Sigler information in order to benefit his own directly competing business.

48. Mr. Whitaker only gained access to this information by his employment with Sigler and he had a duty to maintain the information's secrecy.

49. Defendant disclosed the trade secrets without express or implied consent by Sigler.

50. Sigler suffered damages due to the actual loss caused by the misappropriation as well as the unjust enrichment bestowed on Defendant. Sigler has been damaged by the foregoing actions and is entitled to its damages in an amount to be determined at trial of at least $5,000,000 and, in addition, an award of exemplary damages and attorney's fees.

## THIRD CLAIM

### Breach of Contract

51. Plaintiff re-alleges and incorporates herein by reference the allegations contained in paragraphs 1 through 48 of this Complaint.

52. The Agreement constitutes a valid and binding contract between Sigler and Mr. Whitaker, supported by valuable consideration.

53. The confidentiality and restrictive covenants and other provisions contained in the Agreement are reasonably necessary to protect Sigler's legitimate protectable interest in confidential and proprietary information, trade secrets, customer relationships, and goodwill.

54. Sigler fully performed its obligations under the Agreement.

55. Mr. Whitaker breached and continues to breach the Agreements by the actions alleged herein, including, but not limited to:

    (a) Providing confidential and trade secret information to a directly competing entity during his employment with Sigler, while using Sigler's resources, for the purposes of his own gain in obtaining future employment with the competitor;

(b) soliciting or attempting to solicit Sigler clients to work with NSWright; and

56. As a result of any one of these breaches, Sigler has been injured and faces irreparable injury. Sigler is threatened with losing customers, employees, its competitive advantage, investors, its trade secrets, and its good will in amounts which may be impossible to determine, unless Defendant is enjoined and restrained by order of this Court.

57. Sigler has been damaged by the foregoing actions and is entitled to its damages in an amount to be determined at trial of at least $5,000,000 and, in addition, an award of exemplary damages and attorney's fees.

## FOURTH CLAIM

### Tortious Interference with Contract

58. Sigler re-alleges and incorporates herein by reference the allegations contained in paragraphs 1 through 55 of this Complaint.

59. At the time of the acts alleged herein, Sigler had valid and existing contracts with numerous clients.

60. Upon information and belief, Mr. Whitaker knew of the existence of these contracts.

61. Mr. Whitaker engaged in acts intended to disrupt Sigler's contracts with its clients and by asking them to violate their agreements for Sigler's products and services and to enter into agreements with services from NSWright instead.

62. Upon information and belief, Mr. Whitaker did in fact disrupt Sigler's contracts by inducing Sigler's clients to violate their agreements for Sigler's products and services and to enter into agreements with services from NSWright instead.

63. As a direct and proximate result of Mr. Whitaker's actions, Sigler has suffered damages, including but not limited to, lost business, lost employees, lost productivity, and the cost of re-hire of new employees, in an amount to be

determined in accordance with proof at trial.

64. Mr. Whitaker's actions were willful, wanton, malicious, oppressive, and undertaken with the intent to defraud Sigler, and justify the award of exemplary and punitive damages, as well as attorney's fees and costs.

## FIFTH CLAIM

### Intentional Interference with Prospective Economic Advantage

65. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 62 of the Complaint.

66. Sigler's relationships with its clients are economically advantageous to Sigler. There exists a probability of future economic benefit to Sigler from its business with each of its clients.

67. Mr. Whitaker intentionally interfered with Sigler's business relationships by misrepresenting the quality of work done by Sigler, by misappropriating the confidential Sigler Trade Secrets provided by Whitaker, and by using such information in attempting to persuade clients to work with NSWright instead of Sigler.

68. As a direct and proximate result of Mr. Whitaker's conduct, Sigler has suffered damages, including loss of clients and loss of client confidence, in an amount to be determined at trial of at least $5,000,000.

69. In doing the acts herein alleged, Defendant acted with oppression, fraud, malice, and in conscious disregard of the rights of Sigler, and Sigler is therefore entitled to punitive damages according to proof at the time of trial.

## SIXTH CLAIM

### Unfair Competition (Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.)

70. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 67 of the Complaint.

71. California Business and Professions Code section 17200 et seq. prohibits unfair competition in the form of any unlawful, unfair, or fraudulent

business practice.

72. Defendant violated Section 17200 of the California Business and Professions Code by engaging in acts including but not limited to Mr. Whitaker's provision of trade secrets to a competitor of Sigler while still employed by Sigler, and Mr. Whitaker's disclosure and use of Sigler's Trade Secrets in dissuading potential clients from working with Sigler.

73. As set forth above, Defendant's conduct is unlawful, unfair, and fraudulent.

74. Accordingly, Defendant has committed unlawful, unfair, or fraudulent acts as defined in California Business and Professions Code section 17200.

75. Defendant's conduct is intentional, and he is fully aware that it is illegal, unfair, and fraudulent.

76. Defendant is fully aware of the harm (both financial and otherwise) that his conduct has caused, and continues to cause, Sigler.

77. As a result of the foregoing, Sigler will suffer immediate and irreparable harm, and has suffered, and will continue to suffer, harm including harm that cannot be adequately compensated by money damages. Further, Defendant has been unjustly enriched in an amount to be proven at the time of trial, entitling Sigler to restitution and/or other equitable relief.

## SEVENTH CLAIM
### Declaratory Relief

78. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 75 of the Complaint.

79. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the rights and obligations under the   This controversy necessitates a declaration from this Court as to the respective rights and interests of the parties in regard to Sigler's confidential materials and information. A declaration is appropriate at this time in order that the parties' disputes may be

1  resolved and that the parties may be aware of their respective rights and obligations
2  with respect to ongoing business and the use of such items.

## PRAYER

WHEREFORE, Plaintiff Sigler prays for judgment as follows:

For damages in an amount according to proof at trial;

For restitution and/or disgorgement of all money, profits, compensation or property Defendant has acquired or will acquire by any wrongful or unlawful means or as a result of Defendant's wrongful conduct;

For preliminary and permanent injunction against Defendant and his agents, enjoining the violation of contractual duties owed to Sigler and requiring Defendant to discontinue its use or disclosure of Sigler's confidential information, and to discontinue solicitation of Sigler's customers.

For exemplary and punitive damages in an amount to be determined as appropriate to punish Defendant and deter like conduct;

For prejudgment and post judgment interest at the maximum legal rate, as provided by the laws of California, as applicable, as an element of damages which Sigler has suffered as a result of the wrongful and illegal acts complained of herein;

For reasonable attorneys' fees and costs;

For a declaration of rights, obligations and duties regarding Sigler's confidential materials; and,

For such other and further relief as the Court may deem just and proper.

///
///
///
///
///
///
///

- 15 -
COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff Sigler hereby demands trial by jury as to all legal matters contained in the Complaint.

Dated: October 19, 2018

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ J. David Bournazian
J. David Bournazian
Tyler R. Andrews

Attorneys for Plaintiff
RUSSELL SIGLER, INC.